In the matter of the paper-writings purporting to be the last will and testament and codicil thereto of JULIA H. CHADWICK, deceased.

[Submitted June 24th, 1912.  Decided November 18th, 1912.]

Neither the prerogative court, nor any of the surrogates, of this state have general jurisdiction to admit to probate the last will and testament of a non-resident having a domicile at the date of his death in another state, although decedent leave property in this state, except as ancillary to a probate by the courts of the locality of such domicile.

---

On appeal from a decree of the prerogative court advised by Vice-Chancellor Walker, whose opinion is reported *ante p. 168.*

*Mr. Richard Boardman* and *Mr. Robert H. McCarter,* for the appellants

*Mr. Gilbert Collins,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

The substantial question on this appeal is whether the surrogates of our several counties, or the prerogative court, have jurisdiction to grant original probate of a will of a non-resident testator domiciled in a sister state at the time of his death.

While the precise question raised by the record relates to the power of a surrogate to admit such will to probate, the jurisdiction of the prerogative court in a like case is so connected with the principles of law involved, that it was of necessity argued and should be disposed of in limitation of further litigation of substantially the same matter, for if it should be decided that the surrogate is without jurisdiction, leaving undecided the other question, the proponents could present this will to the ordinary or surrogate-general and thus relitigate a question as to which they have had their day in court, because the real question argued

and to be disposed of is the effect of a testator's domicile upon the jurisdictional right of a foreign court to grant original probate of his will.

The facts are within a narrow compass, and for the purposes of this case all that need be recited is that Julia H. Chadwick died leaving a last will; that her domicile was East Hampton, in the State of New York; that the executors who offered the will for probate resided in the State of New Jersey, having in their possession in the county of Hudson personal property belonging to testatrix; that two of the executors named, the third having renounced, caused the will and codicil to be admitted to probate by the surrogate of the county of Hudson, from which the daughter of testatrix appealed to the orphans court of Hudson county where the order of the surrogate was sustained. The decree was reviewed on appeal to the prerogative court where it was decided, upon the advice of the vice-ordinary, that the surrogate was without jurisdiction and from that decree the proponents have appealed to this court.

The real purpose of the probate is to ascertain whether the deceased left a will, and if so, the appointment and qualification of the person who may be entitled to manage the estate and execute the testamentary directions, which is, generally speaking, the province of the courts of the domicile of the testator, and before that right be exercised by the courts of this state, it should at least appear that the law authorizes it, for it may be fairly assumed that such a course of procedure was not within the expectation of the testator who ordinarily prepares and executes his will according to the law of his domicile, where he may fairly presume it will be admitted to probate, and where all disputes concerning its due execution will be heard.

Again, the heirs and next of kin are not presumed to know in which of many jurisdictions the testator has left property, and if personal property in any location is sufficient to give jurisdiction to probate, they would in most cases be deprived of the opportunity to dispute the due execution of the will, or to raise any legal objection to its probate, for a caveat filed at the domicile would have no effect in a foreign jurisdiction.

We think that upon general principles the due administration of justice demands that last wills should be first probated at the domicile of a testator, and that this rule should prevail in this state, unless the law expressly confers on the ordinary or surrogates probate jurisdiction over wills of non-residents. In disposing of this matter we will first consider the statutory authority of a surrogate relating to the probate of last wills and testaments.

It may be conceded that prior to the constitution of 1844 the surrogates of the different counties of the state were but deputies of the ordinary or surrogate-general, but even then their power and authority was limited by statutes to the county for which they were appointed. This the ordinary held, in the matter of *Abraham Coursen's Will,* decided in 1843 (*4 N. J. Eq. (3 Gr. Ch.) 408*), permitted a surrogate to probate foreign wills, and that the limitation of power had relation to the locality within which he might exercise his power, although operating upon a subject-matter arising out of his county, and therefore the surrogate might admit a foreign will to probate, and if he should do so for one executor, the ordinary might also grant probate for another, upon his separate application. The learned ordinary did not express any opinion as to what the situation would be if he took a different view from the surrogate and refused probate to the second applicant, the surrogate, his subordinate, having already allowed it for the other.

The reasoning leading to the result declared is so illogical that we cannot concede its soundness, for if the statute limiting the power of the surrogate to the county for which he was appointed was not a limitation to matters arising in his county, but gave general jurisdiction over such matters arising anywhere in the state, or in the United States, provided he was within the confines of his own county when he acted, he would have power to probate every will of every decedent without regard to domicile in or out of the state, and once having taken jurisdiction, the ordinary, being thereby deprived of all power except to review on appeal, the office of the surrogate might become of greater magnitude than that of the ordinary. This situation cannot be reached except by pursuing an inaccurate line of reasoning, inconsistent

with the purpose of the statute limiting his power to the county for which he was appointed.

But in 1844 the surrogate was made a constitutional officer and the method of his selection provided for, which was thereafter to be election by popular vote. This divorced him from his former status as deputy and made him an independent officer, whose duties were fixed by the legislature in the revision of 1846, which, among other things, provided that there should be but one surrogate elected in each county "and the power and authority of the surrogate shall be limited to the county in which he is or shall be elected." *Rev. 1846 p. 827*, and this act has never been repealed. *Comp. Stat. p. 5056*. We have no doubt that this statute was intended to, and does, limit the jurisdiction of the surrogate to matters arising in his particular county. and does not grant a general jurisdiction to admit to probate the wills of non-residents of state or county. As to wills of residents of this state his jurisdiction is now by statute expressly limited to cases where the testator resides in his county at the time of death, section 14 of the act relating to orphans court. *P. L. 1898 p. 715*.

Certainly, since the constitution of 1844, the surrogate has no implied or derivative powers and can only exercise those granted by the legislature, and it has not conferred on surrogates the power to probate wills of non-residents. Therefore, without regard to the question of the primary right of the courts of the locality of the domicile of a non-resident testator to probate his will, our statute does not empower a surrogate to assume jurisdiction in such cases, and therefore the power does not exist, and the action of the surrogate in this proceeding was without lawful warrant.

There are statutes providing that the surrogate may record wills where they have been admitted to probate in a foreign jurisdiction, and also in aid of creditors, and perhaps for other purposes, but they have no bearing on the question now under consideration. We are, therefore, of opinion that the learned vice-ordinary correctly decided that a surrogate had no authority to grant original probate of foreign wills. The learned vice-ordinary, however, constrained by cases not having the approval

of this court on the question at issue, but which he felt bound reluctantly to follow, held that if a decedent leave property in this state, original probate of his will may be allowed here. As he denied the right of the surrogate to probate a foreign will in the first instance, it follows that when he said that such will could be proven in this state if decedent left property in this state, he must have had in mind the ordinary as the seat of such power; if this be so, we do not agree with the conclusion, and are of opinion that the prerogative court has no such power, and that its original jurisdiction over the probating of wills is confined to those of decedents domiciled in this state at the time of death, and this notwithstanding there may be property of the non-resident in this state. The comity which should be observed between states would seem to require that the courts of the state of the domicile of a testator should be first permitted to pass upon the question whether its citizen has made a will according to the law of his domicile.

The power to regulate the jurisdiction of the ordinary was assumed by the legislature in 1784 by an act passed December 16th (*Pat. L. p. 59*), which recited that—

"Whereas it is necessary that the power and authority of the ordinary of the state, and his surrogate, should be defined, the jurisdiction of the prerogative court regulated, and an orphan's' court established in the several counties of this state; therefore, I. Be it enacted by the council and general assembly of this state, and it is hereby enacted by the authority of the same, that, from and after the passing of this act, the authority of the ordinary shall extend only to the granting of probates of wills, letters of administration, letters of guardianship, and marriage licenses, and to the hearing and finally determining of all disputes that may arise thereon."

On June 13th, 1820 (*Rev. Laws 776*), this was re-enacted, except that the words "marriage licenses" were omitted. This, and other statutes regulating the jurisdiction of the ordinary, remained in force until by the adoption of the constitution in 1844, the powers of the ordinary were conferred on the chancellor, and it must be assumed that they were so transferred subject to the right of regulation, which the legislature had exercised for sixty years, and that such was the contemporaneous construction. is manifested by the act of the legislature in enacting the statute

·of 1846 (*Rev. p. 203*), the first section of which is in the precise form of the act of 1820, while the second section forbids the ·ordinary granting probate until

"proof be made to his satisfaction that no caveat against proving such will hath been filed in the office of the surrogate of the county where the testator resided at the time of his death, or that notice had been given to all persons concerned of the application to the ordinary for such probate."

The right of the legislature to regulate the jurisdiction of the ordinary has been exercised unchallenged for over a century and has thereby become a fixture in our jurisprudence. An examination of our statutes show that in the act of 1713 (*Rev. Laws 7*), provision was made for the reception in evidence of a duly-certified copy of wills duly proven in the kingdom of Great Britain ·or any of its colonies, and that such provision has been continued by the same or different methods to the present time, so that from ancient times no necessity required that the ordinary should be vested with the power to probate the wills of non-residents. It · is equally clear that no such express power has been given by statute, and wherever assumed it had been upon the alleged ground of a prerogative power, a claim which has no legal foundation in this state, for it cannot be assumed that when the legislature undertook to limit the power of the ordinary and confined it among other things to the probating of wills, they were dealing with subject-matters arising outside of their jurisdiction.

The plain, common sense meaning to be given to the act is that the ordinary was limited to the probating of wills of those domiciled within the state, which was the limit of his jurisdiction. If this be not so, his power is unlimited, for the statute does not make his right dependent upon property. It confines his power to the granting of probate of wills, and if this does not limit it to persons domiciled in the state, it becomes universal irrespective of property rights.

No good reason can be advanced why any other course than that indicated should be observed, for after a will is proved at the place of domicile a copy, properly certified, may be recorded in most, if not all states, and the rights of creditors in all property

located in another jurisdiction can be, and usually are, protected by statute.

The appellants have cited numerous cases all of which have been examined. Those principally relied on in this state are the *Coursen's Will Case, supra,* which has been discussed, and which decides nothing but that once a surrogate has taken jurisdiction the ordinary is deprived of all jurisdiction except on appeal, and *Gordon's Case, 50 N. J. Eq. (5 Dick.) 897,* in which it was held that if the testator left personal property in this state, his will might be proved here even if his domicile was elsewhere; the court refusing to determine the question of domicile, which was one of the issues, set the will aside as a forgery. This court affirmed the finding of forgery, but the domicillary effect on the question of jurisdiction was not argued or decided, and we are not concluded on that point.

The other New Jersey cases cited on this question are all based upon the *Gordon's Case, supra,* and must fall with it, for we are of opinion that it was not correctly decided so far as the present question is concerned, and that if the expression of the court be more than a *dictum,* it is not supported by all the cases cited, and as to those having a contrary tendency we do not approve the reasoning.

As to the other cases cited, and they are numerous, it is sufficient to say that most of them do not run counter to the views expressed in this opinion, and do not weaken our opinion that a due regard for state comity favors the correctness of the principle that the courts of the state of the domicile of a testator have the primary right to pass upon the questions incident to the probate of his will even if some of his personal property be found in a foreign jurisdiction, and that there is no statute of this state which vests in our probate courts a power inconsistent with this view.

If the present proceeding be sustained and the will retained and filed with the secretary of state, as required by our law, this will can never be probated at the place of testator's domicile, except as ancillary to the probate in this state, a proceeding of doubtful right and expressly contrary to the law of this state wherever provision is made for recording a certified copy of a foreign will. *Wallace* v. *Wallace, 3 N. J. Eq. (2 Gr. Ch.) 616.*

There is some evidence that the respondent consented to the probate in this state. The inference to be drawn from the evidence is not free from doubt, but granting that she did consent, that would not confer a jurisdiction on the surrogate which he did not possess, for his jurisdiction depends upon legislative endowment, and not upon the act of a party contesting the probate.

This decree will be affirmed upon the ground that neither the prerogative court nor the surrogate of any of the counties of this state have general jurisdiction to admit to probate the last will and testament of a non-resident having a domicile at the date of his death in another state, although such non-resident leave property in this state, except as ancillary to a probate by the courts of the locality of such domicile.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY—12.

*For reversal*—KALISCH—1.