The matter sub judice is a proceeding seeking to establish and probate an alleged lost last will and testament of Mrs. Fischer, who died on August 21st, 1933, domiciled in the state of New York, leaving her surviving her husband, Frederick G. Fischer, and her brother, George Platto. At her death she was seized of certain real estate situated in New Jersey, and was possessed of certain personal property, most of which was situated in New York.
Letters of administration on her estate were issued originally in this state to her said husband; subsequently, after the granting of general letters of administration on her estate to her brother George Platto, by the courts of New York, the general administration here was revoked and ancillary letters issued also to the said Platto. (See In re Estate of Mae P. Fischer,Deceased, 118 N.J. Eq. 599; 180 Atl. Rep. 633.) *Page 218 
The husband has died and letters of administration c.t.a. on his estate have been issued by the court of this state to Milton E. Mermelstein. The husband left him surviving two daughters by a prior marriage, — Margaret F. Hobson and Elizabeth R. Craner.
The original petition in this matter was filed, shortly after the alleged discovery of the alleged testacy, by Margaret Hobson, as guardian of the husband Frederick Fischer, who had become mentally incompetent shortly after the death of his wife; an amended and supplemental petition has now been filed by the said Margaret Hobson and Elizabeth Craner, and by Mermelstein, administrator c.t.a. of Frederick Fischer. In and by these petitions, in addition to the foregoing facts, — it is alleged that the said decedent, Mrs. Fischer, executed a last will and testament on October 16th, 1930, and that she died testate instead of intestate; that the will itself has not been found, but that a copy thereof exists; that the said alleged will was executed in due form to pass title to real estate in New Jersey; that it has not been admitted to probate, nor are there any pending probate proceedings in the state where the decedent was resident at her death; and that more than three months has elapsed since the death of decedent.
It further appears by the said petitions that under the provisions of the alleged will, the said Frederick Fischer and the Irving Trust Co., were named executors and trustees; that the will gave the income on decedent's estate to the said Frederick Fischer and to John Platto during their respective lives, and gave the corpus to the lineal descendants of Frederick Fischer him surviving; that the said Irving Trust Co., has renounced its right as executor and trustee and Frederick Fischer is dead; that John Platto predeceased Mrs. Fischer, and that the only lineal descendants of Frederick Fischer him surviving are Mrs. Hobson and Mrs. Craner; that the said Frederick Fischer and the said George Platto were the only heirs at law and next of kin of Mrs. Fischer, and that the parties in interest are the said Margaret Hobson, Elizabeth Craner, Milton E. Mermelstein, administratorc.t.a. of *Page 219 
Frederick Fischer, and George A. Platto, individually and as administrator of Mrs. Fischer.
The application is made under authority of the supplement to the Orphans Court act enacted in 1921, — P.L. 1921, c. 283, p.831; 2 Cum. Supp. Comp. Stat. 2604. All of the necessary facts set up by that statute as requisite to give this court jurisdiction to admit to probate the last will and testament of a resident of a foreign state, are duly made to appear by these petitions; and all of the parties in interest have been duly brought before the court and appear. George Platto, individually and as administrator of Mrs. Fischer's estate, is the respondent; the others are petitioners.
The respondent moves to strike or dismiss the petition on the ground (first) of lack of jurisdiction in this court to entertain the same; and (second) that the petition should not be entertained for reasons of comity.
Prior to the enactment of this statute the courts of this state had no jurisdiction to entertain a proceeding for the probate of the will of a decedent domiciled in a foreign state. Chadwick'sCase, 80 N.J. Eq. 471; 85 Atl. Rep. 266; In re Geiser's Will,82 N.J. Eq. 311; 87 Atl. Rep. 628. Concededly there is no statute, other than the one mentioned, which confers, or purports to confer, such power.
It is contended by the respondent that this statute confers jurisdiction on this court to admit to probate the will of a non-resident, only if that document be physically produced and proffered for probate; that it confers no jurisdiction to entertain a suit to establish a will alleged to have been lost prior to probate. It is deemed, however, that no such narrow interpretation can be placed upon the legislative language or intent.
The statute expressly refers to the circumstance of a non-resident dying seized of real estate in New Jersey, and"leaving" a last will and testament executed in due form, c. The natural meaning of this language assuredly extends to include as well the case of a decedent who left such a will which cannot be found, as of one who left such a will which is found and produced. The requirement is only that it must be proven that he did leave such a will. *Page 220 
The purpose of probate proceedings is "to ascertain whether the deceased left a will," (Chadwick's Case, supra, at p. 472), and if so, to make a formal establishment of record of that fact and of the provisions thereof, — and to provide for the determination and qualification of the person or persons to administer the estate. In the same year in which Chadwick's Case, (supra) determined that neither the orphans court nor the prerogative court had power to probate the will of a non-resident, it was determined by In re Cassidy's Will, 80 N.J. Eq. 163,82 Atl. Rep. 920, that the orphans court does have power to establish the contents of a lost or spoliated will of a resident decedent. The prerogative court also has, and always has had, that same power, — as well as the court of chancery. In re Schultz,102 N.J. Eq. 14, 133 Atl. Rep. 762.
It is only rational to conclude, therefore, that when the legislature extended the authority of the prerogative court and of the orphans court to include the probate of wills of non-resident owners of New Jersey real estate, it intended that that authority should be exercised in the same way and to the same extent as theretofore already existed in the case of resident decedents; i.e., to include the power and authority to establish the contents of a lost or spoliated will; and that this court therefore has jurisdiction to entertain the present petition.
The arguments ab inconvenienti, made by respondent to the contrary, are without force because they would apply equally to a case of pure probate of a document physically produced, where questions of revocation, alteration, undue influence and the like were involved.
Turning now to the second ground urged by respondent; — it was shown by the appellate court, and expressly stated, inChadwick's Case, supra, that as a matter of general principles the due administration of justice indicates that lost wills should be first probated at the domicile of the testator. It would be difficult to conceive of a case in which all the circumstances could more clearly point to such a conclusion, than the present one.
The alleged will was made by a resident of New York, was drafted by a New York attorney, was executed in New York, *Page 221 
before witnesses residing in New York, and decedent was a resident of New York at her death. It names a New York Trust Company as one of the executors and trustees, and was lodged in the custody of that company in New York City. The other executor and trustee, Frederick Fischer, who is also one of the beneficiaries named therein, was a resident of New York at the time of decedent's death, and although it was claimed that he was a resident of New Jersey at the time the present proceeding was instituted, that claim is open to serious doubt in view of the findings of the New York court in the administration proceedings (see, In re Fischer, supra) and in view of the fact that he had so soon become mentally incompetent and was in custody in a New York institution. His two daughters, practically the sole beneficiaries under the alleged will, are both residents of New York. The New Jersey administrator c.t.a. of Frederick Fischer, who has a small interest, — perhaps only a purely technical interest, — under the will, is only a few miles from New York City; and if Frederick Fischer was a resident of New York at the time of his death, his administrator c.t.a. should be the appointee of a New York court; in any event, he is the mere nominee of the two daughters. The only other interested party is George Platto, who as an individual is a resident of Ohio, but as administrator of the estate of Mrs. Fischer is an appointee, and subject to the jurisdiction, of the New York court. In all probability, the witnesses involved in the trial of this proceeding will be more than a few, and most, if not all, of them will be New York residents.
New York is pre-eminently indicated as the jurisdiction where the litigation involved in the present proceeding, ought to be carried on and determined. No reason appears in the petition, (nor was any given by petitioners' counsel on this argument), for the institution of this proceeding in New Jersey instead of in New York. Counsel for respondent suggests as the reason, that under the law in New York it would be much more difficult, (if not impossible), for petitioners to prove the alleged existence of the will at decedent's death, than under the law in New Jersey. For present purposes this may be assumed to be true. *Page 222 
The statute heretofore referred to, however, gives this court jurisdiction, and hence would seem to give petitioners the right to have the matter entertained and determined by this court.
The determination in Chadwick's Case was based upon the absence of such a statute, and upon the finding that under the law of this state this court was without authority to entertain a proceeding for the original probate of the will of a non-resident. In reaching this finding, the court considered the principles of comity between states, but gave those principles consideration only in the course of determining what interpretation and effect should be accorded to the provisions of those legislative enactments which gave authority to, or limited the authority of, this court.
In other words, the decision in that case was not that this court had power to probate the foreign will but should refuse to exercise that power because of the principles of comity, — it was that the legislative grant of power to this court, correctly interpreted in the light inter alia of the principles of comity, could not have been intended to, and did not, give power to this court to probate such foreign will. That case therefore affords no basis of support for respondent's present contention, that although this court now has power to entertain the present suit, it should refuse to do so on the ground of due comity.
The court was considering the principles of comity as an actuating force or factor in the legislative mind, — as a reason, or as the reason, for the legislative denial of, or restriction upon, the power of this court. By the passage of the act of 1921, that denial or restriction of power no longer existed; by that enactment the legislature indicated its conclusion and determination that the principles of comity were not, — at least any longer, — a sufficient reason for this state to refuse to probate wills of foreign residents who died seized of New Jersey real estate. The explanation for that legislative conclusion and action doubtless is to be found in the fact that the New York legislature had enacted a substantially similar statute, authorizing the New York courts to probate wills of decedents not resident in New York. See In re Barney, 94 *Page 223 N.J. Eq. 392, at 394, 120 Atl. Rep. 513. Comity implies reciprocity. See Holmes v. Remsen, 20 Johns. (N.Y.) 229,at 263, 11 Am. Dec. 269.
The principle of comity is not a mere doctrine or rule of the courts. It is a principle involved in the relationships of nations or states with each other. It is not an obligation or a rule of international law. It is a principle applied voluntarily by one state or nation in its conduct toward another state or nation; and it is applied by such state not only in the acts of its judiciary but also in the acts of its legislative and its administrative agencies. When exercised by a court it leads to the recognition and enforcement of the laws of a foreign state where, or to the extent that, such laws do not conflict with the local law, or work injustice on the local citizens or violate the public policy of the local state. See 11 C.J. pp. 1235-6 and cases cited.
As has been said, comity implies reciprocity. Whether the action which is based on comity be that of the judicial, or the administrative or the legislative agency, that action is taken either as an actual reciprocation for similar action previously taken by the other state or in the expectation that the other state will similarly reciprocate.
"Comity means that we will do by courtesy what they would do under like circumstances with a citizen of our state," —Rutledge v. Krauss, 73 N.J. Law 397, at 401,63 Atl. Rep. 988.
The legislative enactment by New York of its statute as to the probate of foreign wills, above mentioned, evidenced the purpose of New York no longer to leave solely to the courts of New Jersey the probate of New Jersey wills. Obviously upon no principle of comity (at least so far as New York was concerned), was the legislature of New Jersey required or impelled to refrain from clothing the New Jersey courts with power to probate foreign wills under like circumstances.
Two thoughts occur, — one, that there may be doubt as to the right of this court, in view of Article IV, § 2 of the federal constitution, to refuse to entertain this suit; the other, that it seems at least doubtful that a judicial refusal to entertain a suit, which is authorized by our laws, can ever *Page 224 
be justified as an exercise of comity, — since as has been noted, the doctrine of comity, applied judicially, means the local enforcement, in a suit in which our courts have taken jurisdiction, of the laws of a foreign state, (where such laws do not conflict with our local laws).
Passing these questions, however, — it nevertheless seems clear that in the instant case there should be no refusal to entertain the suit on the ground of comity. In the first place, in view of the New York statute above referred to, there appears no reason to suppose that the New York courts would refuse to entertain such a suit in converse circumstances. In the second place, comity cannot be applied when opposed to the public policy of the local state. The statute of 1921 is a legislative declaration of the public policy of our state in this regard. It evidences a policy of entertaining suits for the probate of the wills of foreign residents who leave real estate located in New Jersey in all cases where three months have elapsed without any such suit having been commenced in the jurisdiction of the decedent's residence.
This is of course by no means a determination that the judicial application of the principle of comity shall not be, or may not properly be, invoked in the course of the trial of this suit. On the contrary it would seem to be precisely there, and in those circumstances, that it might properly be argued that the rules of New York law should, by comity, be applied in the determination of the various issues (or some of them) arising at such trial.
The motion will be denied. Costs will abide the result of final hearing. *Page 225