UNION COUNTY ORPHANS COURT.

IN THE MATTER OF THE ESTATE OF ALBERT WINTER,
DECEASED.

Decided May 24, 1946.

Proctor for trustees under the will of Albert Winter, *G. Bartram Woodruff.*

Proctor for the Young Women's Christian Association, *Richard G. Moser.*

Proctors for the Presbyterian Hospital in the City of New York, *Hopkins, Vorburger & Dickson.*

Proctor for Eleanor Lee Winter, *Raymond T. Parrot.*

McGRATH, J. Albert Winter died a resident of this state on December 18th, 1920. Under his will dated January 6th, 1916, the residuary estate was left by paragraph 14 to trustees for the benefit of his son, Herman Blanchard Winter, with provisions for payment of part of the principal at certain times. The will authorized the son to appoint by will or other testamentary instrument the principal remaining in the hands of the trustees, to any individual or corporation. The relevant facts which have been stipulated are such that if no valid exercise of the appointment has been made the remaining principal valued at about $100,000 goes to certain New York charities named in Albert's will.

On January 11th, 1926, Herman B. Winter, the son, executed a last will and testament under the laws of New Jersey, reciting that he exercised the power in favor of his mother, Anne F. McCully Winter, who is still living in this county.

After the execution of the New Jersey will, Herman married Eleanor L. Winter in 1933. On November 18th, 1934, he signed a paper in Arizona while domiciled there in which he attempted to exercise the power in favor of his wife. The

Arizona will also recited that he revoked all wills and testamentary instruments made by him heretofore. This instrument is a duly executed will under the laws of Arizona and has been probated there but is not executed according to the laws of New Jersey, and cannot be probated here, either as an original will or as a copy of a foreign will. *Seaboard* v. *Topken,* 130 *N. J. Eq.* 46; 20 *Atl. Rep.* (*2d*) 709. He died a resident of Arizona. There is a statute in Arizona affecting wills of married testators.

Herman Blanchard Winter (the son), owned New Jersey real estate at the time of his death and the New Jersey will has been probated under our statute *R. S.* 3 :2–41, 3 :2–42 and 3 :2–43; *N. J. S. A.* 3 :2–41, 3 :2–42 and 3 :2–43, providing for probate of last wills of non-residents who leave real estate in this state.

Two questions arise. (1) Has the power of appointment legally exercised by the New Jersey will of Herman Blanchard Winter been revoked by the Arizona statutes or the Arizona will? (2) If the New Jersey will is still in force in this respect can it be given effect in this state, or is the probate of the New Jersey will confined only to real estate as the will of a non-resident?

It should be noted that there is no claim made that either of the wills was the product of undue influence or insanity or any other disabling factor, so that no question of *res adjudicata* can arise. The question is purely one of construction and jurisdiction. The trust funds are within this state and consist entirely of personal property. The parties in interest are all before the court, and the relevant facts have been admitted by stipulation.

As to the first question, it is clear that the statutes of Arizona and the Arizona will, are both ineffective to revoke the exercise of the power of appointment made by the son in his New Jersey will. The domicile of Albert Winter, the father or donor, was in Union County, and the rule is that the domicile of the donor of a power of appointment given by will must govern as against the laws of the domicile of the donee in determining whether or not the power has been exercised. *Fidelity Union Trust Co., &c.,* v. *William G. Caldwell et al.,*

137 *N. J. Eq.* 362; 44 *Atl. Rep.* (*2d*) 842. As the Vice-Chancellor points out, the donee is but the indicator pointing out to whom the property goes. *Farnum* v. *Pennsylvania Co., &c.,* 87 *N. J. Eq.* 108; 99 *Atl. Rep.* 145; affirmed in 87 *N. J. Eq.* 652; 101 *Atl. Rep.* 1053.

A general power of appointment is not personal property, although it may be considered as such for taxing purposes, *The Pennsylvania Co., &c.,* v. *Kelly,* 134 *N. J. Eq.* 120 (at *p.* 133); 34 *Atl. Rep.* (*2d*) 538, or as to the rights of creditors, *Seward* v. *Kaufman,* 119 *N. J. Eq.* 44; 180 *Atl. Rep.* 857. Nor is it subject to the principle of comity, either as to creation or interpretation. See *Farnum* v. *Pennsylvania Co., &c., supra;* affirmed in 87 *N. J. Eq.* 652; 101 *Atl. Rep.* 1053; *In re Fischer,* 119 *N. J. Eq.* 217; 181 *Atl. Rep.* 875, and *Fidelity Union Trust Co.* v. *Caldwell,* 137 *N. J. Eq.* 362; 44 *Atl. Rep.* (*2d*) 842.

I hold, therefore, that the last will of Herman B. Winter dated January 11th, 1926, is his only last will which disposes of this power of appointment according to the laws of New Jersey and that it has not been revoked by any Arizona statute or by the Arizona will, nor is it in any way affected by them.

The next question is whether the probate of the New Jersey will affects only New Jersey real estate, or whether it operates as a last will and testament sufficient to meet the directions as to the power, in the will of the father and donor, Albert B. Winter. If the New Jersey will of the son is of no effect, then the power of appointment has not been exercised and the funds go by default to the New York charities named in the father's will.

It may be noted, in passing, that the mother and the widow have signed an agreement, which has been offered in evidence. I do not consider that this agreement has any effect on the questions involved in this opinion and I have not been influenced by it.

Counsel for the New York charities contend and correctly so, that the attempted exercise of the power of appointment in the Arizona will is void. But they go further and say that although the execution of the power in the New Jersey will

of Herman is valid, it cannot be of any power in New Jersey since Herman did not die a resident of this state, and that even though the New Jersey will of Herman has been probated here the effect of its probate is limited to real estate.

However, the Court of Errors and Appeals has said that under this statute our courts have original jurisdiction to admit a will of a non-resident to probate when the testator dies seized of real estate here, *In re de Buck,* 125 *N. J. Eq.* 80, 84; 40 *Atl. Rep.* (*2d*) 309, and the provisions of the statute show that it was intended that the probate should be a full probate in the ordinary sense. Provisions are made for notice of application for probate to all those interested and issuance of letters testamentary or of administration *cum testamento annexo.* The statute relates to jurisdiction and the words "probate," "executor," &c., must be construed in their ordinary meaning. *Crawford* v. *Lees,* 84 *N. J. Eq.* 324; 93 *Atl. Rep.* 201; *In re Fischer's Will, supra.* The statute contains no limitations on the powers of the court or the officers appointed by the court as part of the probate proceedings.

It would be fallacious to say that the officer appointed by the court to administer the will would have power only over the real estate, leaving the personal property, if any, outside of the administration of the estate. Usually, or at least frequently, estates consist of both real and personal property and generally speaking, it is impossible to administer an estate with reference to real estate alone. It is the duty of the executor or administrator *cum testamento annexo* to gather in the assets and pay all claims, debts, liens and other charges, and the personal property is the primary fund out of which all claims and liabilities against the estate must first be paid, whether the deceased was a resident or a non-resident. *In re Estate of Maggie Riley,* 92 *N. J. Eq.* 567; 113 *Atl. Rep.* 485. "The incidents of real estate, its disposition and alienation, the right of succession, and all questions as to burdens and liabilities imposed upon it, depend solely upon the *lex rei sitae.* The law of the country where the testator may be domiciled at his death cannot impose burdens or liabilities upon or provide for the disposition of lands in a manner not

recognized by the law of the country where the estate is situated." *Pratt* v. *Douglas, &c.,* 38 *N. J. Eq.* 516.

It is, of course, true that the validity of bequests of personal property depends upon the law of the testator's domicile, but the important distinction to be kept in mind in interpreting this statute is the distinction between the validity of a bequest and the administration of an estate, the paying of debts, &c., before any distribution can be made to the persons entitled. Thus, in *Harral* v. *Harral,* 39 *N. J. Eq.* 279, distribution was made according to the laws of France, although the will was probated here in this state and administered in this state. It so happens that in the present case there is no personal property in New Jersey, but this does not change the general rules of law bearing on the interpretation of the general intent of the legislature in passing this statute.

Furthermore, it must be assumed that the legislature had in mind that there are other matters which can be contained in a will which are neither real nor personal property, but which may be of considerable importance, and have to do with New Jersey trusts, and other matters within our jurisdiction. A power of appointment is an excellent example.

It is objected that the statute does not specifically mention powers of appointment but, of course, the legislature could not mention everything besides real or personal property which can be mentioned in a will. A general grant of jurisdiction is all that is necessary, for this court to enforce a power of appointment which is subject to the law of New Jersey under a will which has been legally probated here. The State of Arizona can have no legal interest in the carrying out of this power of appointment. Its execution and interpretation are governed entirely by the laws of New Jersey.

The history of the statute shows that it contains no limitations. Before *Chadwick's Case,* 80 *N. J. Eq.* 471; 85 *Atl. Rep.* 266, 267, it had been the practice to probate wills of non-residents if there was anything for the probate to operate on, but in the Chadwick case it was decided that the legislature had not given our courts jurisdiction to probate wills of a non-resident, even though he left property in this state. The court said: "We think that upon general principles the

due administration of justice demands that last wills should be first probated at the domicile of a testator, and that this rule should prevail in this state, *unless the law expressly confers* on the Ordinary or surrogate's probate jurisdiction over wills of non-residents." Neither the Chadwick case nor any case preceding it suggested that the state lacked power to provide for probate of the wills of non-residents, but the Chadwick case pointed out that no statute had given this jurisdiction. The policy of this state now is that wills of non-residents may be probated if they meet the conditions named in the statute, one of which is that the decedent shall have died seized of real estate in New Jersey. See *In re Fischer's Will, supra.*

As pointed out in Fischer's case, 119 *N. J. Eq.* (at *p.* 222) ; 181 *Atl. Rep.* 875, the explanation of this legislative activity is doubtless to be found in the fact that the legislature of New York had taken over probate of wills of New Jersey residents, and New York's code not only permitted wills affecting non-resident owners of real estate, but also of personal property in certain cases. See *In re Barney,* 94 *N. J. Eq.* 292, 394; 120 *Atl. Rep.* 513.

In passing this supplement to the Orphans Court Act the legislature, no doubt, had in mind the observations of the court in Chadwick's case as to making possession of personal property alone the basis of probate. The Chadwick case dealt with a will of a non-resident who had died leaving personal property in Hudson County.

The statute is remedial and the title contains no limitation of jurisdiction nor is there any limitation in the body of the act itself as to the effect of probate after it has been granted nor is there anything in the history of the act, nor in a practical construction thereof which could limit its operation to real estate alone. The statute makes legal the practice which had obtained before the decision in the Chadwick case with the condition that the testator must have died seized of real estate situated in this state, and thus meets the objections raised in the Chadwick case as to lack of jurisdiction and the objections to permitting the probate of a non-resident who died leaving only personal property in this state.

In *Farnum* v. *Pennsylvania Co., supra,* the court said: "The donor, at the time of the creation of the power, was a resident of New Jersey. So was the donee. The power was created and exists by virtue of the laws of this state, and it is settled law that the exercise of powers conferred by will is controlled by the law of the testator's domicile, both as to the execution of the power and the interpretation of it. The selection of a foreign trustee and possession of the fund outside of the state, does not affect the rule, for the reason that the property belongs to the estate of a testator domiciled here, and is to be administered according to our laws under the supervision of our courts, to which the trustee is amenable."

In the present case, the donor and the donee were both residents of New Jersey when their wills were made affecting this power of appointment; the funds are in a New Jersey trust situated in New Jersey and subject to our laws and the parties interested are all before the court. If the power of appointment fails, the money goes by default to the New York charities named in Albert Winter's will. Testamentary trusts frequently consist of both real and personal property, as well as intangible rights and powers. These should not be defeated by a narrow construction of a statute giving general jurisdiction over administration of a New Jersey will.