283 N.J. Super. 287 (1994)
661 A.2d 859
DOROTHY MIKO, PLAINTIFF,
v.
RICHARD MIKO, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided August 17, 1994.
*288 Roger Radol, for plaintiff (Jacoby & Meyers, attorneys).
Joseph Haskins, for Marilyn Miko (Haskins & Blunt, P.A., attorneys).
John Cummings, for EDO Corporation, intervenor (McElroy, Deutsch & Mulvaney, attorneys).
KOBLITZ, J.S.C.
This decision arises from a motion brought by EDO Corporation to determine whether it should pay survivorship benefits to the named beneficiary of the decedent's pension plan, Marilyn Miko, or to the plaintiff, the decedent's first wife, Dorothy Miko. Both Marilyn and Dorothy Miko submitted briefs in response to EDO's motion. The issue raised by EDO's motion is whether or not a judgment, which was entered against the deceased defendant for unallocated support arrears, can be collected by way of a Qualified Domestic Relations Order (QDRO) which requires payment of a survivorship benefit bearing a named beneficiary (decedent's second wife, Marilyn) to decedent's first wife, Dorothy, who is the plaintiff in the underlying family action.
The facts in this matter are undisputed. Dorothy and Richard Miko were married on November 12, 1960. Three children were born of the marriage. A judgment of divorce was entered in Bergen County, New Jersey on June 27, 1985. At that time, the parties' agreement was incorporated into the final judgment of divorce. Paragraph 19 of the agreement required defendant, Richard Miko, to pay the sum of $16,120.00 per year in unallocated support to his ex-wife, Dorothy and one minor child, Jonathan, aged 13.
On October 24, 1986, an order was entered in New York for income withholding against the defendant to satisfy his support obligations. Defendant's payments were being made through the Child Support Enforcement Office in Hauppauge, Suffolk County, New York. The case was later transferred to a Florida court when it was discovered that defendant was residing in Florida.
*289 In 1985, defendant had worked as an employee of EDO Corporation for over seventeen years. Through this employment, defendant was a participant in, and was vested in, a pension plan that provided for certain benefits, including survivorship benefits payable to his current spouse surviving him at the time of his death. Defendant did not at any time have the ability to collect or otherwise control the survivorship benefit portion of his pension plan, nor could he even change the beneficiary.
In June 1987, defendant left EDO Corporation after 20 years of employment. However, since he was fully vested, he maintained all rights to the corporation's pension plan. Defendant then removed himself from the state of New Jersey without notice to plaintiff.
Defendant married Marilyn Miko on August 9, 1985, and continued to be married until he took his own life on December 30, 1988. They had no children. Subsequent to defendant's death, Marilyn Miko, as surviving spouse, began receiving monthly survivorship benefits from EDO Corporation pursuant to the survivorship benefit provision of decedent's pension. As the named beneficiary, she received a payment in the amount of $194.75 per month, which amount she was entitled to receive until her death.
On May 17, 1989, a judgment was entered against defendant in the amount of $20,306.73 and was recorded as a lien for the arrearages which had accrued due to his failure to pay support to his first wife and unemancipated child. This judgment was entered five months after defendant's death.
On December 22, 1993, the court entered a QDRO against defendant's pension plan, for the support arrearages owed. The QDRO directed that the sum of $1,333.32 per month be withheld from the decedent's pension plan, even though the sole and exclusive monthly payment being made under the plan by EDO Corporation was the survivorship benefit payable to Marilyn Miko in the amount of $194.75 per month. Marilyn Miko received these benefits from EDO Corporation until February 1, 1994.
*290 EDO Corporation then made a motion to intervene in this matter and to vacate the QDRO entered by the court. EDO has no interest adverse to either the named payee of the plan's benefits, Marilyn Miko, or the ordered payee of the benefits under the QDRO's income withholding requirements, Dorothy Miko. EDO Corporation is placed in a position where it must either violate the imposed QDRO or possibly breach its fiduciary obligation to disburse benefits pursuant to the terms of defendant's pension and in accordance with the provisions of the Employment Retirement Income Security Act of 1974 (ERISA). EDO is seeking the court's assistance in assuring that the monies of the pension plan are properly administered. The court granted EDO's application for intervention pursuant to R. 4:33-1.
It is undisputed that Dorothy Miko waived her equitable distribution rights to defendant's pension plan. It is also uncontested that she never requested that she be awarded any portion of defendant's pension in any of the former enforcement proceedings. Due to his early death, defendant never collected a pension from EDO. However, a judgment was entered against defendant and his property was subject to execution. The court's entry of the QDRO attached the decedent's pension plan in order to satisfy the accrued arrearages.
The court's first concern, not raised by any party, is whether or not a judgment for unallocated support arrears can be entered against a deceased party. Defendant moved from New Jersey without giving any notice. In his absence, his support arrears began accruing. Defendant committed suicide on December 30, 1988. The judgment for arrears was entered on May 17, 1989  five months after defendant's death.
Defendant had agreed to pay the support owed pursuant to the property settlement agreement dated July 30, 1984, which was incorporated into and made a part of the final judgment of divorce entered on June 27, 1985. An order for income execution was entered by a New York court on October 24, 1986. Pursuant to R. 5:7-4, upon the signing of the order or judgment allowing alimony *291 or support or both to be paid through the probation department, the court shall send copies of the order to the probation department with attached statements prepared by the attorney submitting the order showing, if known, the addresses, social security numbers, telephone numbers, and the places of employment of the parties. Thereafter, the parties shall notify the appropriate probation office of any change of employer or address within ten days of the change. Failure to provide information as to change of employer or address shall be considered a violation of the order. R. 5:7-4.
Defendant failed to provide any information with regard to his change of employment or his change of address. He moved out of state without notifying plaintiff or the probation department. His failure to provide this information to the probation department puts defendant in violation of the order. 42 U.S.C.A. § 666 discusses the statutorily prescribed procedures to improve effectiveness of child support enforcement. 42 U.S.C.A. § 666(a)(9) states:
Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due) 
(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,
(B) entitled as a judgment to full faith and credit in such State and in any other State, and
(C) not subject to retroactive modification by such State or by any other State;
Thus, when defendant failed to fulfill his child support obligation (the unallocated support included child support) in a timely manner, a judgment was entered against him by operation of law to enforce payment of this obligation.
Because the written judgment could have been entered at the time of decedent's initial failure to pay his child support obligation, it is of no consequence that the official entry of the judgment occurred five months after his death. The judgment for arrearages provides only for those monies accrued up until the date of defendant's death on December 30, 1988. Hence, the judgment *292 entered against him is both enforceable and subject to claim by plaintiff.
The central issue in this matter is whether the judgment entered against defendant can be collected from the survivorship benefit portion of his pension plan by someone other than the named beneficiary. A QDRO was entered by the court on December 22, 1993, which provided for immediate "income" withholding against defendant's pension benefits from the EDO pension. Marilyn Miko's survivorship benefits were the only pension benefits accrued by defendant then being paid. The QDRO was ordered to satisfy the unallocated support arrears accrued by defendant which converted to a judgment in the amount of $20,306.73.
Both EDO Corporation and Marilyn Miko argue that defendant had no property rights or interest in the pension fund. They argue that the survivorship benefit is not the same as the pension plan because it could only come into being upon the death of the employed spouse. In this regard, they argue that the benefits at issue closely resemble the proceeds of a life insurance policy. Therefore, they argue, the survivorship benefit would not rise to the level of a property interest.
In Biles v. Biles, 163 N.J. Super. 49, 394 A.2d 153 (Ch.Div. 1978), the court held that a judgment on fixed alimony arrears is a money judgment as to which execution may issue. The court found that garnishment of the pension benefits to the extent of defendant's alimony obligation would not conflict with the purposes of ERISA (to prevent alienation and assignment) or constitute a significant burden upon the pension administrator. Id. at 57, 394 A.2d 153. The execution on the pension plan could occur after defendant reached the appropriate age and/or retirement status. However, pension benefits clearly differ from survivorship benefits, since defendant would never be entitled to recover survivorship benefits by reason of the nature of the benefit. This court must determine if a support judgment can be paid from a survivorship benefit.
*293 In Grotsky v. Grotsky, 58 N.J. 354, 277 A.2d 535 (1971), the Court held:
[W]here the circumstances equitably call for such action the court may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the children as beneficiaries, for the purpose of securing due fulfillment of the support order during their minority.
Id. at 361, 277 A.2d 535. Here, no life insurance proceeds naming plaintiff or the minor child as beneficiary exist which could cover the support arrearages. Defendant also did not have the power to name plaintiff or the child as beneficiaries under the EDO survivorship benefit plan. The need for an equitable remedy from the court therefore is clearly present.
The question in this action is whether the proceeds of decedent's survivorship benefit can be used for the purpose of satisfying plaintiff's claim for support and arrearages. N.J.S.A. 17B:24-6(a) provides:
If a policy of insurance, ... is affected by any person on his own life, ... in favor of a person other than himself, ... then the lawful beneficiary, ... shall be entitled to its proceeds and avails against the creditors and representatives of the insured....
Thus by statute the proceeds of life insurance policies payable to a named beneficiary are generally exempt from claims of a decedent's creditors and generally do not become part of the decedent's estate. EDO and Marilyn Miko argue that survivorship benefits are comparable to life insurance.
In DeCeglia v. Estate of Colletti, 265 N.J. Super. 128, 625 A.2d 590 (App.Div. 1993), the girlfriend of a deceased, insured under three life insurance policies, brought an action seeking the policies' proceeds or support from his estate for her child, who was acknowledged to be the son of the deceased. The decedent had life insurance policies naming his mother and sister as beneficiaries and he expressed orally an intention to change the named beneficiary to plaintiff. He died before he could effectuate the policy change. The plaintiff filed suit against the named beneficiaries stating that she was entitled to the proceeds or, in the alternative, that decedent's estate was liable for the support of his *294 child. Id. at 132, 625 A.2d 590. The trial court held that based on the evidence of decedent's oral expressions, decedent intended to make the plaintiff the beneficiary under all three of the insurance policies and his intent would be enforced.
The Appellate Division reversed the trial court, finding that an intention to change beneficiaries must be executed in the prescribed manner; but most significantly for this case, the appellate court held that decedent's obligation to support his child was enforceable and that the proceeds of his insurance policies were available to satisfy his child support obligation. Id. at 133, 625 A.2d 590.
The case at bar is analogous to DeCeglia in that it involves a support obligation which was clearly established. Here the arrearages were reduced to judgment, and the decedent had not fulfilled his obligation of support. Based on the need to fashion an appropriate equitable remedy, and based on a finding that for the purpose of this motion life insurance and survivorship benefits are comparable, the proceeds of defendant's survivorship benefits are available to satisfy the judgment for arrearages and may be attached. Although in DeCeglia the decedent had no dependents and here defendant leaves a second wife of three years and five months, clearly his child support and even alimony arrearages due his first wife take precedence over whatever obligation he might have to his second wife. See Testut v. Testut, 34 N.J. Super. 95, 111 A.2d 513 (App.Div. 1955). A marriage of only three and one-half years duration would not ordinarily lead to any continuing duty of support.
Thus, the proceeds of the survivorship benefit are available to satisfy the decedent's obligation to support his child and first wife.
It is hereby ordered that EDO Corporation shall pay the survivorship benefit of the pension plan of the defendant to plaintiff, Dorothy Miko. Plaintiff shall be entitled to the same amount as was being paid to the named beneficiary, or $194.75 per month. These monies shall be paid to plaintiff until the judgment *295 is satisfied in full, or until the demise of the named beneficiary, Marilyn Miko, whichever occurs first.