696 A.2d 102

MARY ROSE SEAVEY, PLAINTIFF–RESPONDENT, v. NAN LONG, A/K/A NAN LONG SEAVEY, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF RALPH SEAVEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 3, 1997—Decided July 15, 1997.

---

154

Before Judges DREIER, NEWMAN and VILLANUEVA.

*Jeffrey P. Blumstein* argued the cause for appellant (*Szaferman, Lakind, Blumstein, Watter & Blader,* attorneys; *Mr. Blumstein,* of counsel and on the brief).

*Linda G. Alfonso* argued the cause for respondent (*Heilbrunn, Finkelstein, Heilbrunn, Alfonso & Goldstein,* attorneys; *Ms. Alfonso,* of counsel and on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant, Nan Long (Seavey), appeals from an order of the Family Part imposing a constructive trust on seventy percent of the widow's benefits she receives from the Police and Fireman's Retirement System (PFRS) as a result of the death of her late husband, Ralph Seavey. Plaintiff is the late husband's first wife, Mary Rose Seavey. In the property settlement agreement incorporated in the divorce judgment, plaintiff was given fifty percent of the husband's pension benefits, in effect as equitable distribution.[1] While the husband was alive, the payments were to be made to plaintiff, her estate or a beneficiary named in her will. *See N.J.S.A.* 43:16A–12.3 (governing the designation of beneficiaries for death benefits). The property settlement agreement then provided:

> In the event that the Husband shall predecease the Wife, the Wife shall still be entitled to receive the spousal benefit portion of the Plan until her death. She shall further be entitled to receive *any death benefits available through this Plan* and the Husband shall make appropriate arrangements with his Pension Plan to effectuate that distribution.
>
> [Emphasis added.]

The central issue in this case does not involve actual "death benefits," which were only insurance proceeds. These benefits,

---

[1] There was a statement in the property settlement agreement addendum that the payments were to be considered alimony from a taxation basis, but considered equitable distribution for divorce purposes.

although eventually made payable by the husband to defendant, his second wife, were voluntarily paid over to plaintiff by defendant. The issue before us concerns the payment of the widow's pension, a separate pension defined under *N.J.S.A.* 43:16A–12.1. The trial judge determined that under the circumstances of this case, where plaintiff's income had terminated by reason of her former husband's death, where she had a lengthy marriage to the decedent, and where she was now infirm and unable to work, the provisions of this will and fundamental fairness dictated the imposition of a constructive trust to effect a division of the widow's pension, with seventy percent to plaintiff and thirty percent to defendant, net of taxes.

While a court of equity is indeed empowered to achieve substantial justice between the parties and to be innovative in effecting this result, there is an additional principle that "equity follows the law," although this maxim is not slavishly followed. "While it is true that in ordinary circumstances equity follows the law and will not divest rights that have been legally acquired, that doctrine must yield if extraordinary circumstances or 'countervailing equities' call for relief." *Monmouth Lumber Co. v. Indemnity Ins. Co. of North America,* 21 *N.J.* 439, 451, 122 *A.*2d 604 (1956) (quoting *Camden Trust Co. v. Handle,* 132 *N.J.Eq.* 97, 108, 26 *A.*2d 865 (Err. & App.1942)). Because contractual and property rights of the parties are not to be infringed upon without an appropriate basis in either law or equity, we must examine whether defendant's pension benefits were correctly taken from her by the trial judge.

In this case, if decedent had not remarried at least two years before his death (later amended to one year), there would have been no widow's benefits payable to anyone. *See N.J.S.A.* 43:16A–1(24); 43:16A–12.1a. Indeed, if defendant remarries or dies, the benefits will cease. *Ibid.*

There is no provision in the definition of a "widow" for continuation of payments to a divorced wife to whom the PFRS member's own benefits had been paid prior to the decedent's death.

*N.J.S.A.* 43:16A–1(24).[2]   There is also no provision now in the law for a Qualified Domestic Relations Order (QDRO) under the PFRS that could have protected plaintiff's claim to a pension. Other pension or benefit systems provide for a spouse of many years who has been divorced. *See, e.g.,* 42 *U.S.C.A.* § 402(b) (the survivors benefits section of the Social Security law).   But our Legislature is free to eliminate such a benefit.

Thus the husband's remarriage and the passage of two years vested the widow's benefits solely in the new wife.   These are her property by statute, and there were no other death benefits available for plaintiff other than the life insurance.   Furthermore, no such benefits could have been expected for plaintiff under the terms of the property settlement agreement because such benefits would only arise after the husband's remarriage. The term "death benefits" in the property settlement agreement could not therefore have referred to the new widow's benefits created by statute for the benefit of a new wife.   Moreover, the former wife was so advised by the Division of Pensions just after the 1985 divorce, and could have moved to reopen the equitable distribution settlement if this issue was material to her agreement. Instead, she waited over ten years to make this claim.   Plaintiff thus had no reasonable expectation of payments after the former husband's death, except for the life insurance death benefit proceeds that she has received.

In effect, the trial judge, out of concern for the disabled and obviously needy first wife, has imposed an obligation on the second wife to share her statutory widow's benefits and to support the first wife.   The court has taken the property of defendant, who is not in any way a wrongdoer and does not possess any property for which the first wife, or even the decedent, could have made a claim.   We know of no authority for the court to accomplish this

---

[2] We were informed by plaintiff's attorney that there are two bills pending in the Legislature to effect this result, with a "grandfather" clause preserving the rights of present beneficiaries through double payments.

end. The court cannot merely designate the pension as the subject of a constructive trust and provide for the first wife.

Plaintiff has urged that we consider four cases cited by the trial judge as precedent for the requested action, three of which can be easily distinguished. We disagree with the fourth.

In *Thiel v. Thiel*, 41 *N.J.* 446, 197 *A.*2d 354 (1964), the Court refused to give effect to a provision in a private pension plan which forbade legal process against the pension in order to provide support for a wife. The Court stated: "The husband's duty is to share his pension benefits with his wife, and the courts of the state of her residence ... ought to enforce that duty when there is no other reasonably practical means of obtaining support open to her within the state." *Id.* at 451, 197 *A.*2d 354. Similarly, in *Cleveland v. Board of Trustees, Police and Firemen's Retirement System*, 229 *N.J.Super.* 156, 162, 550 *A.*2d 1287 (App.Div. 1988), this court held that PFRS could make equitable distribution payments to a former spouse from a pensioner's monthly benefits. The widow's pension at issue in our case, however, is not and was not the property of the husband, nor could he choose the beneficiary. *Thiel* and *Cleveland* are thus distinguishable.

We agree with plaintiff that in appropriate circumstances the court may impose a constructive trust. Such a circumstance was present in *Carr v. Carr*, 120 *N.J.* 336, 576 *A.*2d 872 (1990). There the husband had died during the pendency of a divorce and after the parties had separated. *Id.* at 340, 576 *A.*2d 872. The Court noted that the wife's elective share against his estate was conditioned upon the couple having resided together at his death, and that her right to equitable distribution was conditioned upon the husband having survived until the date of the anticipated divorce decree. *Id.* at 343–44, 576 *A.*2d 872. Where the husband died prior to the divorce becoming final, but after the couple had separated, the law made no provision for her benefit. *Id.* at 346, 576 *A.*2d 872. The Court therefore devised an equitable remedy and imposed a constructive trust, but this trust was imposed upon the property over which the husband had control, not upon a

legislatively mandated pension payable to another in her own right, as in our case. *Id.* at 351–54, 576 *A.*2d 872.

The one case plaintiff can look to for direct support is *Miko v. Miko,* 283 *N.J.Super.* 287, 661 *A.*2d 859 (Law Div.1994). There, the defendant husband had defaulted on alimony and support payments in the amount of $20,306.73 as of the time of his death. *Id.* at 289, 661 *A.*2d 859. He had left the jurisdiction and remarried. *Ibid.* A QDRO had been entered, requiring payment of support from his pension plan. *Ibid.* When he died, his pension payments ceased, but a survivorship benefit commenced to his then-spouse, paying her $194.75 per month. *Ibid.* The employer found itself in the position of violating either the QDRO or its fiduciary obligation to the new wife to disburse the survivor benefits to her and, incidentally, possibly violating the Employee Retirement Income Security Act of 1974. *Id.* at 290, 661 *A.*2d 859. The employer thus applied to the court for instructions. *Ibid.*

The court in *Miko* determined that the "child support and even alimony arrearages due [the decedent's] first wife take precedence over whatever obligation he might have to his second wife." *Id.* at 294, 661 *A.*2d 859. The court entered judgment directing the payment of the second wife's survivorship benefits to the first wife until the arrearages were satisfied. *Id.* at 294–95, 661 *A.*2d 859. The court duly noted the second wife's argument that "defendant had no property rights or interest in the pension fund" and "that the survivorship benefit was not the same as the pension plan because it could only come into being upon the death of the employed spouse." *Id.* at 292, 661 *A.*2d 859.

We agree that *Miko* and the case before us are similar except we have determined that (1) in *Miko* the claim had been reduced to judgment, a largely irrelevant factor; and (2) in *Miko* the husband had defaulted on specific obligations. In the case before us, on the other hand, the husband provided all that he had agreed to provide, but apparently the husband and plaintiff may not have understood that survivors benefits only took the form of insurance benefits, and that there was a separate spousal pension.

We could distinguish the cases on this basis, but we would still be faced with the principle expressed in *Miko* that a surviving spouse's separate pension rights are assessable for the obligations of the deceased husband where the husband has had no right to control the amount of the pension or the entitlement thereto. Insofar as *Miko* might provide a basis for plaintiff in our case to obtain or even share in the pension payable to the second wife, we disagree with the conclusion expressed in *Miko*, although we appreciate the humanity that fostered it.[3]

If the husband had control over the widow's benefits and had defaulted on an agreement with his former wife and then transferred the asset or benefit to his new wife, the trial court could have taken the action it did under the doctrine that "equity regards as done that which ought to be done." *Hadley v. Passaic Nat'l Bank & Trust Co.*, 113 *N.J.Eq.* 548, 551, 168 *A.* 38 (Ch.1933). This type of result is often reached with respect to insurance policies where a required beneficiary change has not been made and a constructive trust is imposed. *See Vasconi v. Guardian Life Ins. Co. of America*, 124 *N.J.* 338, 346–47, 590 *A.2d* 1161 (1991); *Prudential Ins. Co. of America v. Reid*, 107 *N.J.Eq.* 338, 341–42, 152 *A.* 454 (Ch.1930). But that is not the case here. The ruling of the trial judge in favor of plaintiff's claims and the balancing of the equities attempted here demonstrates the need for a legislative solution. But a court cannot balance equities by taking a portion of a widow's statutory entitlement and giving it to a former spouse. Whatever good intentions the trial judge may have had, this result cannot be sustained.

---

[3] Although *Miko* has been cited in *Black v. Walker*, 295 *N.J.Super.* 244, 261, 684 *A.2d* 1011 (App.Div.1996), for the proposition that support orders may be entered for minor children even following a father's death, the attachability of a new wife's pension rights was not there considered. The contrary position, finding that pension benefits are not available to an ex-spouse, was expressed in a different setting (Medicaid eligibility purposes) in *L.M. v. State, Division of Medical Assistance and Health Services*, 140 *N.J.* 480, 497–98, 659 *A.2d* 450 (1995).

The order appealed from is vacated, and the matter is remanded to the Family Part for an order dismissing the complaint.