726 A.2d 280 (1999)
319 N.J. Super. 591
Rose RAYNOR, Plaintiff-Respondent,
v.
Wayne Douglas RAYNOR,[1] Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1999.
Decided March 29, 1999.
*282 Leanna Pike Treese, for defendant-appellant (Pellettieri, Rabstein and Altman, Princeton, attorneys; Ms. Treese, on the brief).
David A. Gies, West Trenton, for plaintiff-respondent.
Before Judges KING, WALLACE and FALL.
*281 The opinion of the court was delivered by FALL, J.S.C. (temporarily assigned).
In this post-judgment matrimonial appeal, we examine the obligation of the estate of a deceased parent to contribute toward the college costs of unemancipated children of the marriage in a unique factual circumstance, involving interrelated issues of joinder; federal preemption; the rights of children to the proceeds of an employersupplied, federally-regulated life insurance policy in accordance with the final judgment of divorce; the competing rights of the designated-beneficiary, surviving widow of decedent, and the unemancipated children to life insurance policy proceeds of a second, privately-purchased, life insurance policy; and the appropriate manner of analyzing the respective rights and obligations of the children, the deceased parent's estate, the surviving parent, and decedent's surviving widow.
The estate of decedent, Wayne Douglas Raynor, appeals from an order directing the estate pay fifty percent (50%) of the college costs of the unemancipated children from the proceeds of the privately-obtained life insurance policy naming decedent's widow, Janet Raynor, as beneficiary. We rule that the proceeds of that life policy can be considered when evaluating the obligation of decedent's estate to contribute to the college costs of the unemancipated children. We also hold that the assets and income of the children must be considered when evaluating the responsibility of the estate to contribute to those college costs, including that portion of the decedent's employer-supplied, federally-regulated life insurance policy proceeds received by the children, as well as any other benefits they received as a result of their father's death.

I
The decedent, Wayne Douglas Raynor and plaintiff, Rose Raynor (n/k/a Rose Ermi) were married October 13, 1973. Two children were born of the marriage, Wayne Jr., on April 11, 1975, and Brian Raynor, on September 16, 1978. Plaintiff and decedent were divorced on October 20, 1986. In the final judgment of divorce, decedent was ordered to:
[c]ontinue his life insurance policy provided by his employer to which he contributes, with the plaintiff as trustee and the children as irrevocable beneficiaries for so long as his child support obligation continues.
The final judgment is silent concerning the obligation of either party toward the future college costs of the children.
Decedent married Janet Kochie (n/k/a Janet Raynor) in September 1990. At the time of final judgment of divorce, decedent worked at Kepner-Tregoe, Inc., with life insurance coverage equal to the amount of his annual salary. Subsequently, decedent left his employment with Kepner-Tregoe and began working for the United States Post Office, which provided him a life insurance policy through the Federal Employees Group Life Insurance (FEGLI) program. This program was created and is regulated by federal law. See 5 U.S.C. §§ 8701 to 8716. Decedent also purchased a separate, private policy of insurance on his life with Prime America, with a $130,000 death benefit, and he named his wife, Janet Raynor, as sole beneficiary.
During post-judgment litigation in 1993 concerning his obligation to contribute toward the college costs of the child Wayne, *283 Jr., decedent filed a case information statement (CIS) listing his children as the beneficiaries on the FEGLI policy.
On December 10, 1993, decedent was ordered to pay one-half of Wayne, Jr.'s college expenses. Decedent thereafter became ill and fell into arrears on his child support obligation, due to inability to work because of his illness.
On July 27, 1995 decedent, gravely ill, changed the beneficiary designation on his FEGLI life insurance policy, naming his wife, Janet Raynor as beneficiary of seventysix percent (76%) of the policy proceeds, with the children designated as beneficiaries of twenty-four percent (24%) of the policy proceeds, the latter payable on his death to a trust, created by his last will and testament for the benefit of both children, with Janet Raynor as trustee.
On October 6, 1995, decedent's counsel wrote to plaintiff requesting a reduction in decedent's child support obligation based on the new income he anticipated from disability and asking that he no longer be obligated to pay for one-half of Wayne, Jr.'s college costs. No application was made by decedent for modification of his court-ordered obligations.
On December 5, 1995, decedent died of Black Lung Disease. Two life insurance policies were in effect at the time of decedent's death: (1) the privately-obtained Prime America policy with a death benefit of $130,000 with Janet Raynor as the primary beneficiary; and (2) the FEGLI policy with a face value of $215,700 with Janet Raynor as beneficiary of seventy-six percent (76%) of the proceeds and the remaining twenty-four percent (24%) of the proceeds to be held in trust for the benefit of the children under the terms of his testamentary trust.
The proceeds of the Prime America policy were paid to Janet Raynor in January 1996. Plaintiff contested distribution of the FEGLI policy proceeds in accordance with the beneficiary designations, asserting a claim on behalf of the children to one hundred percent (100%) of the proceeds, pursuant to the terms of the final judgment of divorce. In April 1997, Janet Raynor filed a complaint for declaratory judgment in Federal District Court seeking an order directing that the insurance carrier pay the $215,700 FEGLI policy proceeds in accordance with the beneficiary designations. Rose Raynor, in her answer, counterclaim and crossclaim in the federal suit, requested that the court direct the insurance carrier to pay the entire policy proceeds to the children. The basis of her claim was that decedent wrongfully changed the beneficiary designation on this employer-supplied life policy contrary to the terms of the final judgment. A settlement of the federal litigation was reached in April 1998, resulting in the children receiving $80,000 of the $215,700 policy proceeds.
By letter dated May 29, 1997 counsel for the child Brian requested that his father's estate pay one-half of his college expenses. Brian graduated high school in June 1996 and attended The College of New Jersey as a full-time student commencing in September 1996. In the Fall 1997 Brian transferred to Mercer Community College as a full-time student and returned to The College of New Jersey in September 1998 to complete his undergraduate education. Wayne, Jr. graduated high school in June 1993 and thereafter attended Mercer Community College, receiving an associate's degree in December 1995. In January 1996, Wayne, Jr. enrolled as a full-time student at The College of New Jersey to complete his undergraduate education.
In September 1997, plaintiff moved in the Family Part, seeking an order compelling the Estate of Wayne Douglas Raynor to pay fifty percent (50%) of the college expenses of both Brian and Wayne, Jr. The Estate of Wayne Raynor filed an answer and cross-motion seeking counsel fees. Janet Raynor, as executrix of the estate, certified the estate was insolvent. Plaintiff, in her reply brief, requested that the estate's share of the children's college expenses be paid from the proceeds of the Prime America life insurance policy.
Plaintiff's motion was heard November 21, 1997. The judge issued an order requiring the Estate of Wayne Raynor to pay fifty percent (50%) of the college expenses of Brian Raynor and Wayne Raynor, Jr., from the proceeds of the Prime America life insurance policy. The FEGLI life insurance policy *284 proceeds were not specifically addressed, as same were still subject to the then-pending proceedings in federal court. That litigation was not settled until April 1998, subsequent to the Family Part order. We note, however, that even under the contested beneficiary designation of the FEGLI policy, the children were entitled to twenty-four (24%) percent of those policy proceeds.
The motion judge determined the life insurance proceeds from the Prime America policy were part of the estate for the purpose of support for the children, and that the obligation of the decedent to satisfy his child support obligation takes precedence over whatever obligation he may have to his second wife, citing DeCeglia v. Estate of Colletti, 265 N.J.Super. 128, 137, 625 A.2d 590 (App. Div.1993), and Miko v. Miko, 283 N.J.Super. 287, 294, 661 A.2d 859 (Law Div.1994). The judge also determined Janet Raynor had notice of plaintiff's application in her capacity as executrix of the estate; she had the opportunity to present her arguments in the certification she provided in the motion; and the decision of the court was against the estate, thus, whatever obligations Janet Raynor had would be through her obligations to the estate as executrix.Finally, the judge applied the factors in Newburgh v. Arrigo, 88 N.J. 529, 545, 443 A.2d 1031 (1982), and found while there was no evidence to suggest decedent would have contributed to the children's education had the family remained intact, the estate has the financial ability to pay for fifty percent (50%) of the college expenses of the children. While plaintiff did not supply evidence that Brian was receiving financial aid or grants, the court order "assumes that Brian will apply for financial aid to help defray the cost of college."
On appeal, appellant presents the following arguments for consideration:
POINT I
THE TRIAL COURT ERRED BY ENTERING AN ORDER EFFECTING THE RIGHTS OF AN INDIVIDUAL NOT JOINED AS A PARTY TO THE ACTION.
POINT II
THE TRIAL COURT ERRED IN REQUIRING JANET RAYNOR TO PAY THE COLLEGE EXPENSES FROM THE PRIME AMERICA POLICY WHEN THERE WAS A SECOND POLICY LEFT FOR THE BENEFIT OF THE CHILDREN FOR THE PURPOSE OF SECURING WAYNE'S SUPPORT OBLIGATION.
POINT III
IN MAKING A DETERMINATION THAT THE ESTATE IS LIABLE FOR COLLEGE EXPENSES, THE TRIAL COURT ERRED IN ITS ANALYSIS OF THE FACTORS UNDER NEWBURGH V. ARRIGO.

We consider these arguments in the order raised.

II
Appellant contends the motion judge erred by issuing an order affecting the rights of Janet Raynor without requiring her to be joined as a party. Plaintiff maintains Janet Raynor, as executrix of the estate, had notice of the motion, as evidenced by her certification provided in response to plaintiff's motion, and was not beyond the jurisdiction of the court. We agree.
Joinder is governed by R. 4:28-1(a), which provides:
(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the persons may be made a defendant.

*285 [R. 4:28-1(a).]
Appellant, Janet Raynor, cites Gerhard v. The Travelers Ins. Co., 107 N.J.Super. 414, 258 A.2d 724 (Ch.Div.1969), to support her claim of error. In Gerhard, the dispute was between Travelers Insurance, who paid the proceeds of a life insurance policy to Cornelia Pollard, the named beneficiary, and the daughter of the decedent, who argued she was given the insurance through an inter vivos gift. Id. at 422, 258 A.2d 724. The court determined Travelers Insurance was well within its rights in paying the proceeds to Ms. Pollard. Ibid.
Appellant relies on the following language of the court, to support her contention that no order affecting the rights of a beneficiary of an insurance policy can be issued unless the beneficiary is joined as a party to the action:
Cornelia Pollard (beneficiary) is not a party to this action. Although the amended complaint named Cornelia Pollard as a party defendant, plaintiffs were unable to serve her in New Jersey and, since Mrs. Pollard is not a resident of this state and had no contacts with New Jersey, the attempt to serve her by mail outside the state was without effect. Consequently, the court's decision herein can in no way affect the rights of Mrs. Pollard.

[Id. at 420-421, 258 A.2d 724.]
Appellant asserts that in all the reported cases involving proceeds of life insurance in the context of matrimonial actions, the beneficiary of the proceeds is a named party. See Della Terza v. Estate of Della Terza, 276 N.J.Super. 46, 647 A.2d 180 (App.Div.1994) (second wife named defendant where case involves distribution of life insurance proceeds to her when final judgment of divorce requires the policy cover the child of the first marriage); Hirko v. Hirko, 166 N.J.Super. 111, 398 A.2d 1353 (Ch.Div.1979) (mother of decedent named as defendant where life insurance proceeds sought by first wife to pay alimony arrears); see also Seavey v. Long, 303 N.J.Super. 153, 696 A.2d 102 (App.Div. 1997) (decedent's second wife named as defendant in suit by first wife to obtain widow benefits from ex-husband's pension). While it is true, in the cases cited by appellant, the beneficiaries of the proceeds were all joined in the action, this fact alone does not, as appellant suggests, stand for the proposition if a beneficiary is not joined in an action where the proceeds are in issue, the court has no jurisdiction to determine the matter as between the parties who have been joined.
Recently, in Ross v. Ross, 308 N.J.Super. 132, 143, 705 A.2d 784 (App.Div.1998), we found no error where the trial court adjudicated a matter involving survivor benefits in the absence of joinder of a party claiming an interest in the subject of the action. There, the first spouse (Ms. Ross) moved to have the Family Part enter qualified domestic relations orders (QDROs) entitling her to survivor benefits under her former husband's pension plans and annuity contract, in accordance with the property settlement agreement (PSA). Because the underlying action was one for divorce, only Mr. and Ms. Ross were parties; the surviving spouse (Ms. Chiloro) was never formally made a party to the action. Id. at 139, 705 A.2d 784. The trial court executed QDROs in favor of Ms. Ross, finding the pension benefits had already vested in Ms. Ross as of the judgment of divorce and the transfer of assets through the PSA. Id. at 140, 705 A.2d 784. Ms. Chiloro appealed, claiming she was "a necessary and indispensable party to the proceedings below and the failure to join her requires this court to vacate the orders entered by the Family Court Judge." Id. at 142, 705 A.2d 784.
While acknowledging Ms. Chiloro should have been joined in the matter because she "claimed an interest in the survivor benefits (the subject of the action) and the disposition of such benefits in her absence impedes her ability to protect that interest," we upheld the jurisdiction of the trial court to adjudicate the matter, relying on the introductory comment to R. 4:28-1. Ross, 308 N.J.Super. at 143-144, 705 A.2d 784. That comment provides, in relevant part:
Even if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process. But the court can make a legally binding adjudication *286 only between the parties actually joined in the action. It is true that an adjudication between the parties before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person. These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; but they do not themselves negate the court's power to adjudicate as between the parties who have been joined.

[Pressler, Current N.J. Court Rules, comment 1 on R. 4:28-1 (emphasis supplied); Ross, 308 N.J.Super. at 144, 705 A.2d 784.]
Similarly, here, while Janet Raynor should have been joined as a party to the action because of her interest in the life insurance proceeds, her absence from being named as a formal party in the motion did not deprive the trial court of jurisdiction to decide the issue between the parties who were joined. See R. 4:28-1; Ross, 308 N.J.Super. 132, 705 A.2d 784. The motion judge made a determination as to the action between the Estate of Wayne Raynor and Rose Raynor, the parties joined in the action. In light of the comments to R. 4:28-1, and our determination in Ross, the decision of the motion judge to adjudicate this matter cannot be considered error.
In Ross, we found the surviving spouse bound by the court's decision based on her active intervention and participation in the action, despite not having been formally joined as a party. Ross, 308 N.J.Super. at 147, 705 A.2d 784. Ms. Chiloro submitted a brief with accompanying exhibits and certifications outlining her interests to the court. She participated in argument, and was designated by the court as an "intervenor" for purposes of the hearing. Id. at 145, 705 A.2d 784. We found her participation sufficient to submit her to the jurisdiction of the court, stating "[w]e hold that a judgment may be binding as an estoppel on a person who, although not nominally or formally a party to the action in which it was rendered, submitted his or her interest in the subject matter of the litigation to the consideration of the court and invited its adjudication thereon." Id. at 147, 705 A.2d 784.
Here, the judge found Janet Raynor had an opportunity to respond in her capacity as the executrix of the Estate of Wayne Raynor, and submitted a certification on behalf of the estate in response to plaintiff's motion. While appellant claims to not have had notice of plaintiff's intent to pursue distribution of the proceeds of the Prime America life insurance policy, it is clear from her letter brief in response to plaintiff's motion that the proceeds from this life policy were in fact considered by her as one possible area from which plaintiff might seek funding to fulfill the estate's obligation. In addition, Janet Raynor's certification contradicts her position that she did not have notice of plaintiff's intent to pursue the insurance proceeds. In paragraph five of her October 30, 1997 certification, she expresses her understanding that the life insurance proceeds are not part of the estate, and references her attorney's letter brief on this issue. In light of the statements in her certification and her position as executrix of the estate, we find she had adequate notice of plaintiff's intent to pursue the proceeds from the Prime America life insurance policy.
While Janet Raynor's participation in the proceedings does not rise to the level of the surviving spouse in Ross, her level of activity suggests she had notice and an opportunity to participate in the proceedings. In addition, as the court's decision was directed to the estate, any affect on Janet Raynor is through her capacity as executrix, see N.J.S.A. 3B:10-23; In re Winter's Estate, 24 N.J. Misc. 172, 47 A.2d 548 (1946) (executor or administrator of estate owes duty to gather assets and pay all claims, debts, liens, and other charges against estate); In re Hibbler's Estate, 78 N.J. Eq. 217, 78 A. 188 aff'd 79 N.J. Eq. 230, 81 A. 1133 (1911) (duties of executor are to pay testator's debts). Therefore, she is bound by the court's decision through her obligations as executrix. Although the Prime America life insurance proceeds were paid to Janet Raynor in 1996 without objection, this fact does not affect her obligations to the Estate. As the motion judge noted, *287 [Y]ou're the executor or executrix of the estate and you have two kids who are, one actively in college and one about to enter college and you just say, `Oh, isn't this nice. I have this windfall of life insurance policies.'
....
Well, maybe she should have talked to a lawyer then.
Here, the judge did not abuse her discretion by adjudicating the issue of the estate's liability for college expenses of the children absent the formal joinder of Janet Raynor.

III
Appellant asserts the motion judge erred by ordering a portion of the college expenses paid from the Prime America policy when the FEGLI policy was partially designated for the benefit of the children for the purpose of securing decedent's support obligation. Plaintiff maintains both the final judgment of divorce and the post-judgment order are silent as to the purpose of the work-related life insurance policy and, since the parties did not contemplate college expenses at the time of divorce, the work-related insurance proceeds were established to secure decedent's obligation to pay for necessities, not his obligation to pay college expenses.
An award of support is within the discretion of the trial court. It will not be disturbed unless it is "manifestly unreasonable, arbitrary, or clearly contrary to reason or to the evidence, or the result of whim or caprice." DeVita v. DeVita 145 N.J.Super. 120, 123, 366 A.2d 1350 (App.Div.1976). Findings by the trial court are considered binding on appeal when supported by adequate, substantial and credible evidence. Rova Farms Resort v. Investors Insurance Co., 65 N.J. 474, 483-484, 323 A.2d 495 (1974).
N.J.S.A. 2A:34-23(a) authorizes a court to enter support orders directing a parent to contribute to the education of a child. The statute provides, in relevant part:
[T]he court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit....
....
(a) In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
(1) Needs of the child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;
(8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]
A parent's support obligation is binding on his or her estate. Kiken v. Kiken, 149 N.J. 441, 451, 694 A.2d 557 (1997); see also Black v. Walker, 295 N.J.Super. 244, 263, 684 A.2d 1011 (App.Div.1996) (holding a father's estate liable for illegitimate daughter's college expenses); Della Terza, 276 N.J.Super. at 49, 647 A.2d 180 (holding father's estate liable for portion of insurance proceeds due daughter under court-ordered life-insurance policy); DeCeglia, 265 N.J.Super. at 133, 625 A.2d 590 (holding father's obligation to support illegitimate child was enforceable against his estate); Koidl v. *288 Schreiber, 214 N.J.Super. 513, 516-517, 520 A.2d 759 (App.Div.1986) (holding support order entered against father who admitted paternity would be interpreted as requiring support payments to continue after father's death).
Here, the motion judge considered the proceeds from the FEGLI policy as separate and apart from decedent's obligation to provide for the children's college education, stating:
But their father is dead. Then maybe heifif they get that life insurance policy, you don't think that his children are entitled to receive [the] life insurance policy that they were named the beneficiary of? That's separate and apart from the college education. They were supposed to have that because perhaps for the rest of his life, he would have helped them in other ways. He might have bought them a car when they graduated college. He might have helped set them up in an apartment. There might have been ahe might have helped finance weddings for them. There might be a million other things he would have done.
....
[T]he insurance policies could not have been earmarked for college because they did not contemplate college at the time of divorce. It came up later. The insurance policies were for whatever. To make sure those children had a fund of money that was available to them up until the time they graduated college. The college issue comes up, it's argued before Judge McManimon on the child who is of college age and he orders separate and apart for them to pay for college. It's clearly not that moneyotherwise, it would not have been a separate expense.
....
[I]t would not have been a separate order.
The problem we have with this analysis is that the language of the final judgment clearly required the children be designated as beneficiaries of the life insurance "for so long as his child support obligation continues." We view an imposed college contribution as simply another form of child support. Further, article IV(1) of decedent's will clearly demonstrates his intent that the insurance proceeds designated for the children be used " ... for the reasonable health, support, education and maintenance ..." of the children.
The judge further found the proceeds of the life insurance policies includable in the estate, and the decedent's obligations to his children to take precedence over whatever obligations he may have had to his second wife:
The Appellate Division in DeCeglia considered the question of whether the proceeds of decedent's life insurance policies are includable in his estate for the purpose of satisfying child support claims and determined that the insurance proceeds could be included in the estate. N.J.S.A. 17B:24-6(a) provides if a policy of insurance is effected by any person on his own life in favor of a person other than himself, then the lawful beneficiary shall be entitled to its proceeds and avails against the creditors and representatives of the insured.
To the same extent, N.J.S.A. 17B:24-9 provides a policy of group life insurance or the proceeds thereof payable to the beneficiary thereunder shall not be liable either before or after payment to be applied by any legal or equitable process to pay any debt or liability of such insured individual. However, our Courts have held that the basic purpose of the statutory provisions which exempt the proceeds of insurance policies and related benefits from the claims of creditors is to protect the beneficiaries from commercial creditors. Consequently, such provisions did not necessarily foreclose the claims of those to whom the insured or other claimant owes a duty of support.
....
Likewise, here the only assets of theof value in decedent's estates are the life insurance policies. Defendant's child support obligations take precedence over whatever obligation he might have to his second wife otherwise. See Miko v. Miko, 283 N.J.Super. 287, 294, 661 A.2d 859 (Law Div.1994); Testut v. Testut, 34 N.J.Super. 95, 111 A.2d 513 (App.Div.1955).

*289 Therefore, the proceeds of defendant's life insurance policies are not exempt from the child support obligation and defendant's obligation to pay Wayne's college expenses shall be satisfied from the life insurance policy naming defendant's second wife as the beneficiary.
Appellant maintains the purpose of life insurance under Grotsky v. Grotsky, 58 N.J. 354, 277 A.2d 535 (1971), is to provide security for support. We agree. Since the purpose of life insurance is to provide for support, appellant asserts the court erred in ordering the college expenses paid from the proceeds of the Prime America policy, as the decedent was required to maintain the FEGLI policy to secure his support obligations, and these support obligations include the payment of college expenses. Therefore, appellant argues, any payment of college expenses should come from the FEGLI proceeds, and not the Prime America proceeds. We agree that the FEGLI policy proceeds must be considered in the college contribution analysis. That may, or may not, implicate the Prime America policy proceeds, depending upon the college costs of the children and the other factors contained in Newburgh. It is certainly clear that, inter alia, "the financial resources of the child, including assets owned individually or held in custodianship or trust" must be considered in the college costs calculus. Newburgh, 88 N.J. at 544, 443 A.2d 1031.
In Grotsky, defendant-father challenged the court's authority to require him to maintain life insurance policies with his children as irrevocable beneficiaries to secure fulfillment of support payments during the children's minority. The Court upheld the lower court's decision noting, "where the circumstances equitably call for such action, the court may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the minor children as beneficiaries, for the purpose of securing due fulfillment of the support order during their minority." Id. at 361, 277 A.2d 535.
While it is clear in New Jersey insurance proceeds may be used to secure support obligations, including college expenses, our courts have not dealt with the situation where two insurance policies exist, neither of which have been specifically ear-marked for college expenses, and the children are already guaranteed an amount from the proceeds of one of the policies which would cover all or a significant portion of their proposed college costs.
Appellant asserts requiring college expenses to be paid from the proceeds of the Prime America policy amounts to a taking from an innocent party and unjustly enriching another, contrary to Seavey, 303 N.J.Super. at 157, 696 A.2d 102. In Seavey, the trial court, under provisions of the will and based on fundamental fairness, imposed a constructive trust on a widow's pension in favor of the first wife, to the detriment of the second wife. Id. at 156, 696 A.2d 102. We reversed, finding no authority for the court to designate the pension as the subject of a constructive trust to provide for the first wife, noting:
In effect, the trial judge, out of concern for the disabled and obviously needy first wife, has imposed an obligation on the second wife to share her statutory widow's benefits and to support the first wife. The court has taken the property of defendant, who is not in any way a wrongdoer and does not possess any property for which the first wife, or even the decedent, could have made a claim.

[Id. at 157-58, 696 A.2d 102.]
Similarly here, the motion judge has, out of concern for the children, imposed an obligation on the second wife to support decedent's children. In Seavey, the first wife was in desperate need of financial assistance, while here, decedent's children are entitled to $80,000 from the FEGLI proceeds, and an additional amount from their father's pension. Despite the first wife's circumstances in Seavey, this court found no authority for the trial court to impose a constructive trust upon the pension proceeds. Id. at 157-158, 696 A.2d 102.
What distinguishes Seavey from this case is that the vesting and distribution of the widow's pension in Seavey was defined by N.J.S.A. 43:16A-12.1. Looking at the statutory *290 language, we found no provision in the definition of "widow" for continuation of payments to a divorced wife, nor any provision for a QDRO that could have protected plaintiff's claim to a pension. Id. at 156-157, 696 A.2d 102. Here, no statutory provisions exist preventing the trial court's determination that the Prime America proceeds were available through the Estate to secure payment of the children's college costs. We conclude the use of the Prime America proceeds to meet decedent's college costs contribution obligation may be appropriate. However, before that issue is reached, it is necessary to consider the reality that the children have received a portion of the FEGLI policy proceeds.
At the time the matter was heard by the motion judge, plaintiff, on behalf of the children, was contending in Federal District Court the entire FEGLI policy proceeds belonged to the children. It was clear under the beneficiary designations that at least twenty-four percent (24%) of those policy proceeds, amounting to approximately $51,768, was payable to the children. Subsequent to the decision of the motion judge, the federal suit was settled, resulting in $80,000 payable to the children.
In general, a designated beneficiary has a vested property right "which can be divested only by a change of beneficiary in the mode and manner prescribed by the [policy]." Metropolitan Life Ins. Co. v. Woolf, 138 N.J. Eq. 450, 454-455, 47 A.2d 340 (E. & A. 1946). However, our courts have permitted insurance proceeds to be distributed to a person other than the named beneficiary, especially where child support obligations are an issue. "[I]n each case which allowed the insurance proceeds to be distributed to a person other than the named beneficiary, there was a writing to dispute the beneficiary designation. There was either a written divorce agreement or a divorce judgment which was found to control the disposition of the insurance proceeds." Czoch v. Freeman, 317 N.J.Super. 273, 287, 721 A.2d 1019 (App. Div.1999). Here, decedent was previously ordered to provide support for college expenses, and the trial court relied on this order in determining the Prime America proceeds were available to meet decedent's support obligation.
In Moehring v. Maute, 268 N.J.Super. 477, 481, 633 A.2d 1055 (Ch.Div.1993), the court determined so long as a parent is financially able to do so, he is obligated to continue support until the child graduates and becomes fully emancipated, regardless of the child's "new found wealth." The child in Moehring was awarded a personal injury settlement. The father, who had been ordered to contribute to the child's college expenses, attempted to discontinue the support obligation, arguing the child should pay with her settlement monies. The court noted,
[a] personal injury settlement differs from a custodial or trust account established for the child's education. Clearly funds set aside for educational purposes should be utilized to defray the parent's obligation. The personal injury settlement, however, was intended to compensate Sheri Ann for her pain and suffering.

[Id. at 481, 633 A.2d 1055.]
Here, the FEGLI proceeds were to secure decedent's support obligation, which encompasses a contribution for college costs. See N.J.S.A. 2A:34-23(a). Decedent was required to maintain the work-related insurance policy with his children as beneficiaries, "for so long as his child support obligation continues." The proceeds from this insurance policy should be considered first when determining decedent's support obligations, including college expenses.
Decedent failed to comply with the language of the final judgment of divorce when he changed the beneficiary of his work-related FEGLI policy and named Janet Raynor as a seventy-six percent (76%) beneficiary of the policy proceeds, albeit he retained the children as beneficiaries of a testamentary trust, with the trust corpus consisting of twenty-four percent (24%) of the FEGLI policy proceeds.
Under New Jersey law, it is clear that this change of beneficiary could be set aside, since "a provision such as was contained in the judgment of divorce in this case to maintain the child as beneficiary in a life *291 insurance policy until emancipation creates an equitable assignment where such designation has not, in fact, occurred." Della Terza v. Est. of Della Terza, 276 N.J.Super. at 49, 647 A.2d 180. Normally, plaintiff's application to set aside decedent's beneficiary designation as violative of his final judgment application would be brought in our state courts, either as a post-judgment motion in the matrimonial matter or as a separate declaratory judgment action against the insurance company and named beneficiary.
However, plaintiff's action was brought in the Federal District Court because of the nature of FEGLI policy. Decedent worked for the United State Post Office and obtained life insurance under the Federal Employees Group Life Insurance (FEGLI) program. The Federal Employees Group Life Insurance Act, 5 U.S.C.A. §§ 8701 to 8716, mandates that the underwriting life insurance company pay the FEGLI policy proceeds to the designated beneficiaries. 5 U.S.C.A. § 8705(a). Absent fraud, this federal statute preempts any state law arising from the divorce decree which would grant plaintiff any right to contest decedent's FEGLI beneficiary designation. Metropolitan Life Ins. Co. v. McMorris by McMorris, 786 F.2d 379, 380 (10th Cir.1986). See also Ridgway v. Ridgway, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) (Beneficiary designation under Servicemen's Group Life Insurance Act, 38 U.S.C.A. § 765, held to prevail over constructive trust imposed upon proceeds by state court under doctrine of preemption). In McMorris, the court also determined that a change of beneficiary in contravention to the requirements in a state divorce judgment was not sufficient to constitute fraud, stating, in relevant part:
Additionally, Miss McMorris's contention that the trial court erred in granting summary judgment "without determining whether the fraud occasioned by the deceased father entitled [Miss McMorris] to a constructive trust,' Brief of Appellant at 7, is without merit. Although Ms. McMorris may have a cause of action against the estate of John McMorris for violation of the provisions of the divorce decree, we hold that as a matter of law the alleged fraud of John McMorris could not be a basis for any claim by Miss McMorris against Metropolitan arising out of Metropolitan's payment of the FEGLI proceeds to the four designated beneficiaries.
[Metropolitan Life Ins. Co. v. McMorris by McMorris, 786 F.2d at 381.]
Thus, under federal law, the policy proceeds are payable to the beneficiary designated by the decedent, even under these circumstances. The federal suit was settled for $80,0000, amounting to about thirty-seven percent (37%) of the policy proceeds. Of course, as McMorris recognizes, where a decedent changes the beneficiary designation contrary to the requirements of a court order, the court-required beneficiaries may have a cause of action against decedent's estate. Here, this cause of action took the form of a post-judgment motion seeking a contribution toward the college costs of the unemancipated children.
A parent need not make testamentary provisions for a child. Koidl v. Schreiber, 214 N.J.Super. at 516, 520 A.2d 759; N.J.S.A. 3B:5-16. Here, decedent changed the beneficiary designation on the FEGLI policy on July 27, 1995, and then executed his Last Will and Testament on August 1, 1995 creating a testamentary trust under Article IV, naming the children as the beneficiaries and the corpus of the trust to consist of the designated life insurance policy proceeds. The residuary beneficiary and trustee under the will is Janet Raynor. Based on this record, the intent of decedent seems clear, namely, to satisfy his life insurance obligation under the terms of the final judgment by changing the beneficiary designation under the FEGLI policy and then distributing the designated policy proceeds to the children in controlled fashion through the testamentary trust.
Of course, the result is quite different. Prior to the July 27, 1995 beneficiary change, the children were named as beneficiaries. If decedent had not changed his beneficiary designation, the entire $215,700 policy proceeds would be payable to the children, and the $130,000 Prime America policy proceeds would still be payable to Janet Raynor. Considering the federal suit settlement, the *292 children received $80,000 from the FEGLI policy, and Janet Raynor received $135,700 from the FEGLI policy, as well as $130,000 from the Prime America policy. There is nothing in the record revealing whether decedent had a prior will or, if so, what it contained. The life insurance requirement in the October 20, 1986 divorce judgment related to his employer-supplied policy while working for Kepner-Tregoe, Inc., in an amount one times his salary. There is nothing in the record revealing the exact amount of that life insurance benefit, but it clearly was significantly less than $215,700. In his July 1993 CIS, the FEGLI policy is listed with a face amount of $161,480, with the children as designated beneficiaries. There is nothing in the record explaining the increase in the policy to $215,700 by decedent's death in December 1995.
The intent of the divorce judgment life insurance requirement was to provide security to insure continued support for the children. This includes college education costs of the children. We also note that payment of a dollar-child support amount, in addition to the college costs contribution, must also be considered by application of the factor-analysis contained in N.J.S.A. 2A:34-23(a). Pressler, Current N.J. Court Rules, Appendix IX-A, "Considerations in Use of the Child Support Guidelines," paragraph 18. The guidelines are not applicable when determining the parental obligation for child support of unemancipated college students. Rather, the child support obligation is considered in light of all the financial circumstances of the parties and children.
In complex factual situations with competing interests, such as presented here, the guiding principle is the best interest of the children and the fulfillment of the intent contained in the final judgment that decedent provide the children with support in the event of his untimely death. See Kiken v. Kiken, 149 N.J. at 447-48, 694 A.2d 557; Black v. Walker, 295 N.J.Super. at 261-62, 684 A.2d 1011. Those support needs can be quantified, and an analysis should involve consideration of the distribution made of the FEGLI proceeds. Only if those proceeds are insufficient to satisfy the reasonable higher educational needs of the children should the Prime America life policy proceeds be considered. The factors enumerated in Newburgh v. Arrigo, 88 N.J. at 545, 443 A.2d 1031 and the child-support factors contained in N.J.S.A. 2A:34-23(a) must also be weighed.
Here, the judge did not take into consideration the availability of the FEGLI proceeds or other monies received by the children as a result of their father's death, to help meet decedent's reasonable obligation to contribute to the children's education and support, while unemancipated. The failure to take these funds into account requires a remand for further consideration, consistent with this opinion.

IV
Appellant asserts the motion judge failed to consider all necessary factors in determining the estate's ability to pay college costs, and did not adequately analyze financial resources of the children in rendering its decision. Plaintiff maintains the needs of the surviving spouse are not a factor in the analysis, and that the motion court properly analyzed the children's financial resources when it recognized the children were entitled to twenty-four percent (24%) of the FEGLI proceeds, but determined these proceeds to be separate and distinct from decedent's obligation to pay college expenses, and based the order on the assumption the children would apply for financial aid. As noted above, the judge did not fully consider the financial resources of the children.
"In general, financially capable parents should contribute to the higher education of children who are qualified students." Newburgh, 88 N.J. at 544, 443 A.2d 1031. In determining whether to require a parent to contribute to a child's higher educational costs, the Court set forth a number of factors for a court to consider:
In evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher *293 education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[Id. at 545, 443 A.2d 1031.]
Here, the motion judge considered factors one, three and five, and mentioned factor ten in passing:
[T]here is no evidence to suggest defendant would have contributed to the children's education had the family remained intact. College educationcollege expenses were not discussed in the final judgment of divorce and there isn't anything to suggest that the college education was important to the defendant. However, also to be considered, the amount ofthe contribution sought by the child for the cost of higher education and the availability of financial aid in the form of college grants and loans.
Here, Brian has stated the yearly cost of at the College of New Jersey is $14,000 and the cost of Mercer County Community College for the year he attended was $4,000. These costs are not unreasonable. Both costs are subsidized by local and/or state government. In addition, plaintiff has not supplied any evidence that Brian receives any financial aids or grant. The Court order that will be entered assumes that Brian will apply for financial aid to help defray the cost of college. Also, to be considered, the ability of the parent to pay the costs.
In the case at bar, defendant's estate asserts that it does not have the financial resources to pay for college costs. Plaintiff claims that the college costs should be paid from the two insurance policies on defendant's life. One policy names the children as beneficiaries for 24% and the second wife is for 76%. Second policy names the second wife as sole beneficiary. The estate asserts that the insurance policies are not part of the estate. As stated earlier, the insurance policies will be considered part of the estate in order to satisfy defendant's support obligations.
....
Therefore, after consideration of the Newburgh factors, it is clear that the estate has the financial ability to pay for the college expenses and shall pay 50% of these expenses. These payments are to be made from the life insurance policies that names defendant's second wife as the beneficiary.
While originally, the Newburgh factors were presented only as a guide, see Kiken, 149 N.J. at 449, 694 A.2d 557, these factors were accepted by the legislature in enacting N.J.S.A. 2A:34-23(a). In both Newburgh and N.J.S.A. 2A:34-23(a), the financial resources of the child are a factor to be considered by the court in determining a parent's obligation to provide support for a child's education. See N.J.S.A. 2A:34-23(a)(7) (the court ... shall consider ... [i]ncome, assets and earning ability of the child); Newburgh, supra, 88 N.J. at 545, 443 A.2d 1031 (courts should consider ... the financial resources of the child....). Here, the judge gave cursory attention to this factor, based on a determination that the FEGLI proceeds and other assets of the children were separate and apart from decedent's obligation to provide for college expenses. We disagree with that conclusion. In addition, the court did not have adequate information before it to make a determination of the costs of education for the children. The court relied on certifications provided by the children; *294 it did not require proof of tuition expenses or evidence that the children had applied for financial aid. Nor did the court inquire into the course and duration of study being pursued by the children or the ability of the children to earn monies during the school year and summer vacation. Further, the record does not contain any disclosure concerning the financial circumstances of plaintiff. It is axiomatic that plaintiff's ability to contribute to the college costs must also be evaluated within the context of all the circumstances to assess the reasonableness of the ordered fifty percent (50%) contribution by each party.
While "[a]mong the Newburgh factors, the parents' ability to pay is clearly the most significant," Moehring, 268 N.J.Super. at 481, 633 A.2d 1055, this factor alone should not be considered to the exclusion of all others. The judge had an obligation under Newburgh and N.J.S.A. 2A:34-23(a) to consider all the enumerated factors, including the financial resources of the children and plaintiff's financial circumstances, in rendering a decision.

V
In summary, we affirm the motion judge's determination that the Prime America life insurance policy proceeds can be considered in evaluating the obligation of defendant's estate to contribute to the college costs and child support of the unemancipated children. However, under the circumstances of this case, the Prime America policy proceeds should only be considered after first considering the amounts received by the children from the FEGLI policy. We reverse the order directing that fifty percent (50%) of the college costs of the unemancipated children be paid from the proceeds from the Prime America life insurance policy, and remand for reconsideration of the college contribution obligation of defendant's estate considering all of the factors listed in Newburgh v. Arrigo, 88 N.J. at 545, 443 A.2d 1031, including, but not limited to, the assets and income of the two children during the applicable period, inclusive of the FEGLI policy proceeds received and any other death benefits, and the financial circumstances of all parties.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Wayne Douglas Raynor died on December 5, 1995, prior to the application to the trial court giving rise to this appeal. The real parties in interest are the Estate of Wayne Douglas Raynor and his widow, Janet Raynor.